UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

_In re_:

DAVID LESTER WARFEL, JR.,
and JEANNE MARIE WARFEL,

       Debtor.

Case Number: 20-11651-13

---

DAVID LESTER WARFEL, JR.,
JEANNE MARIE WARFEL, and
MARK HARRING,

       Plaintiffs,

    v.

21ST MORTGAGE CORPORATION,

       Defendant.

Adversary Number:  21-00002

## DECISION ON TRUSTEE'S COMPLAINT TO AVOID DEFENDANT 21ST MORTGAGE CORPORATION'S LIEN PURSUANT TO 11 U.S.C. § 544

David and Jeanne Warfel ("Plaintiffs") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on June 25, 2020. Jeanne Warfel previously borrowed $129,703 from 21st Mortgage Corporation ("Defendant") to fund her purchase of a 28' x 53' manufactured home. She signed a promissory note and granted Defendant a security interest. The home was delivered and set in place on land Plaintiffs had purchased in a prior year.[1] Defendant filed a Proof of Claim asserting it had a perfected security in the manufactured home.

---

[1] The land was purchased from another person in 2017 who financed it.

On January 11, 2021, Plaintiffs began an adversary proceeding against the Defendant to avoid the lien on the manufactured home pursuant to 11 U.S.C. § 544(b)(1). A motion to dismiss the adversary proceeding was filed by the Defendant. The motion alleged the Plaintiffs did not have standing to bring an avoidance action under section 544(b)(1). Further that Defendant has a properly perfected security interest in the manufactured home.

This Court denied the motion, concluding that the Plaintiffs did have standing. A trial was held on the matter, and the Court granted judgment to the Plaintiffs, ordering that the Defendant's lien be avoided under section 544(b)(1).

Defendant appealed the decision to the District Court. The District Court reversed this Court's order agreeing with the contention that "the Warfels don't have the right to file an adversary proceeding under § 544." (ECF No. 56 p. 1). Thus it was unnecessary for the District Court to consider whether the lien was properly perfected or whether section 544 authorizes avoidance of an unperfected lien. *Id.* It found that the Bankruptcy Code reserved this right to the trustee. It also remarked that "one leading treatise suggested that the debtor may name the trustee as a plaintiff to comply with § 544." (citing Robert E. Ginsberg, Robert D. Martin & Catherine J. Furay, *Ginsberg and Martin on Bankruptcy* § 15.03[D]).

The case was remanded for further proceedings consistent with the opinion of the District Court. At an initial status hearing after remand, the possibility of amending the complaint was raised by the Plaintiffs. They asked

for a brief adjournment to confer with the Trustee about his willingness to be named as a plaintiff. Defendant noted it would object to any amendment but did not object to a brief adjournment.

A second status hearing occurred. The parties agreed that derivative standing had been waived. The Trustee stated he would be willing to be added as a plaintiff. Defendant was asked for argument. Counsel for Defendant reiterated her view that joinder of the Trustee had been waived under any alternative. Further that any claim by the Trustee would be barred by the two-year statute of limitations.

The Court on its own ordered that the Trustee be joined under Fed. R. Bankr. P. 7021 (incorporating Fed. R. Civ. P. 21), further noting he is an indispensable party.[2] Counsel for the Plaintiffs stated an amended complaint could be prepared and sent to counsel for the Trustee within two weeks. The Court ordered that it be filed by February 20, 2023.

An amended complaint was filed. The Trustee was named as the plaintiff. The amended complaint claimed that the Defendant's lien is unperfected and avoidable under section 544. Other than the joinder of the Trustee, the claims and relief sought in the amended complaint are identical to the original complaint. Defendant filed an answer restating its position that its lien was properly perfected. It also asserted the claim of the Trustee was barred by a

---

[2] Defendant filed a notice of appeal of this interlocutory decision. The District Court denied the appeal as premature, noting that Defendant could request reconsideration in the bankruptcy court. (ECF No. 73).

statute of limitations, and that the ability of the Plaintiffs to add or substitute

the Trustee had been waived.

A motion to reconsider joinder was filed by Defendant. It contained

extensive argument. A hearing on that motion was held.

Defendant confirmed:

- There was a final hearing on the original complaint in February 2022;

- Defendant had the opportunity to present all evidence about whether the manufactured home was a fixture or a moveable;

- Defendant could not identify any newly discovered evidence that could not have been presented at the trial; and

- There are no issues of fact about whether the lien is avoidable.

The parties agreed that the only issues to be decided were legal issues.

Specifically whether (1) joinder of the Trustee was proper; (2) whether a claim

by the Trustee is time barred by a statute of limitations; and (3) whether the

lien was avoidable.

A briefing schedule was set. Defendant has submitted its brief. The Court

has considered Defendant's arguments.

**DISCUSSION**

I.   <u>Jurisdiction</u>

Defendant argues that this Court improperly used Fed. R. Bankr. P.

7021 to join the Trustee in the adversary proceeding. It claims the use of the

Rule was improper because parties cannot be joined post-judgment. And it

4

says joinder had been forfeited by the Plaintiffs. Finally, joinder results in undue prejudice to both the Defendant and to unsecured creditors according to Defendant.

If joinder was proper, Defendant argues that the amended complaint should be considered new. Defendant posits that if treated as a new complaint it would be, therefore, barred by the statute of limitations under 11 U.S.C. § 546.

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). Venue is proper in this Court as provided in 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court may enter final judgment. 28 U.S.C. § 157(b)(1).

II.   <u>Joinder of Trustee is Proper</u>

    A.   *This Court has the Authority to Join the Trustee Under Federal Rule of Bankruptcy Procedure 7021.*

The Defendant argues that the Plaintiffs cannot join the Trustee under Fed. R. Bankr. P. 7021 (incorporating Fed. R. Civ. P. 21). Rule 21 provides that:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may *at any time*, on just terms, add or drop a party.

Fed R. Civ. P. 21 (emphasis added). The Defendant argues that because the Plaintiffs lacked standing when they filed the original complaint, they cannot use Rule 21 to gain standing post judgment.

This is a mischaracterization of how the joinder occurred. Plaintiffs did not file a motion. This Court ordered joinder of the Trustee on its own under Rule 7021. As provided, Rule 21 may be invoked by the Court on its own. The

Trustee could not have been joined without an order from this Court, even if

Plaintiffs had filed a motion. 3 *Moore's Federal Practice* § 21.02[3] (Matthew

Bender 3d ed.). So the necessary determination is whether the joinder order by

this Court on its own was proper.

Rule 21 itself dictates that it might be used "at any time." It has been

established that courts have discretion to make orders under Rule 21 even

after judgment has been rendered. *See Newman-Green, Inc. v. Alfonzo-Larrain*,

490 U.S. 826, 832 (1989). The Defendant fails to make an argument showing

that despite this clear language, joinder is impermissible because the Plaintiffs

did not have standing when they filed the original complaint.

Their argument relies largely on invoking *Cole v. James B. Nutter & Co.

(In re Cole)*, 563 B.R. 526, 530-31 (Bankr. W.D.N.C. 2017). That case is not

binding on this Court. And it fails to show why application of Rule 21 is

inappropriate given the facts here. In *Cole*, plaintiffs filed a complaint and

listed claims under sections 544(b), 547(b), and 548 only to find that they did

not have standing. *Id.* at 530. The court refused to order joinder of the trustee

to facilitate the continuation of the actions. *Id.*

But *Cole* involved the involuntary joinder of a trustee under Fed. R. Civ.

P. 19 (incorporated by Fed. R. of Bankr. P. 7019), not Rule 21. *Id.* at 531. The

court in *Cole* distinguished the circumstances in *Cole* from *Wood v. Mize (In re

Wood)*, 301 B.R. 558, 562 (Bankr. W.D. Mo. 2003). The court in *Wood* allowed a

Chapter 13 trustee to be joined as an indispensable party plaintiff after finding

that the debtors did not have independent standing to pursue a claim under

§ 547. *See id.*, 301 B.R. at 562–63. It remarked that:

> In this Court's view, the trustee is an indispensable party within the context of this proceeding because he is the only person with standing to bring the action and full relief cannot be accorded the creditors of the estate without his joinder.

*Wood,* 301 B.R. at 562.

The court in *Cole* distinguished between the cases because there was no indication in *Wood* that the trustee resisted joinder, while the plaintiffs in *Cole* were requesting that the court join the trustee under protest. *Id.*; *Cole,* 563 B.R. at 531. The Defendant is therefore incorrect when it interprets *Cole* to mean that voluntary parties cannot be joined to a complaint if the original filer lacked standing. *See id.*

The Defendant fails to draw a parallel between *Cole* and the present case. *Cole* involved a motion by debtor under Rule 19, but this case involves use of Rule 21 by the Court. The trustee in *Cole* was resisting joinder, while the Trustee in this case willingly participates in the action. This case is more like *Wood*: the Trustee is an indispensable party, without whom the action cannot continue, and the Trustee was joined willingly. *Wood,* 301 B.R. at 562. Therefore, application of these cases would suggest that joinder of the Trustee was proper here. Given these considerations, the Defendant's use of *Cole* cannot overcome the plain meaning of Rule 21, which allows joinder "at any time."

The Defendant also contends that the District Court was wrong to rely on *Ginsberg and Martin* in suggesting that the debtor may name the trustee as a plaintiff to comply with section 544. *Ginsberg and Martin* states that "[i]n the appropriate case, naming the trustee as a party plaintiff may solve the standing issue." *Ginsberg and Martin on Bankruptcy §* 15.03[D]. The Defendant bases its assertion on the fact that *Ginsberg and Martin* relies on *Montgomery v. Dennis Joslin Co. II, LLC (In re Montgomery)*, 262 B.R. 772, 776 (B.A.P. 8th Cir. 2001).

It is true that *Montgomery* does not directly apply here. It decided that the avoidability of a lien should not be considered when determining whether the court should grant relief from stay under section 362. *Montgomery*, 262 B.R. at 775-76. The correct process to argue avoidance would have been an adversary proceeding, and the plaintiff would either need to invoke derivative standing or join the Chapter 13 trustee as a plaintiff. *See id.* There was no adversary.

This does not mean that *Ginsberg and Martin* is wrong. Other courts have allowed a Chapter 13 trustee to be named as a party plaintiff in an amended complaint to pursue a Chapter 5 recovery. In *Gardner v. Tyson (In re Gardner)*, 218 B.R. 338, 342–44 (Bankr. E.D. Pa. 1998), the court permitted a Chapter 13 debtor to maintain a fraudulent transfer action by adding the Chapter 13 trustee as a party plaintiff. That same court later distinguished voluntary and involuntary joinder, ruling that a trustee could not be joined involuntarily to an action under section 544 given the requirements of Rule 19. *See Funches v. Household Fin. Consumer Discount Co. (In re Funches)*, 381 B.R.

8

471, 487 (Bankr. E.D. Pa. 2008). Courts in multiple other jurisdictions have ruled similarly. *See, e.g., Portuesi v. Bank of New York Mellon Trust Co. (In re Portuesi)*, No. 19-11275, Adv. No. 20-2018, 2021 WL 2189014, at *4 (Bankr. M.D.N.C. May 28, 2021) (allowing debtors to file an amended complaint naming Chapter 13 trustee as plaintiff to use section 544 avoiding power); *Bank of New York v. Sheeley (In re Sheeley)*, No. 08-32316, Adv. No. 11-3028, 2012 Bankr. LEXIS 1374 (Bankr. S.D. Ohio Apr. 2, 2012) (adding Chapter 13 trustee as an indispensable party in amended complaint under Rule 19).

Thus, this Court finds that joinder of the Trustee was a proper application of Rule 21, as a lack of standing when the original complaint was filed does not render joinder improper.

B. *Joinder is Not Precluded by "Undue Prejudice" to the Defendant or Unsecured Creditors.*

It has been established that if joinder would create "prejudice, expense or delay," the court *may* deny joinder under Rule 21. *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001). But the Defendant fails to show how issuing the joinder order prejudices them so "unduly" that a reversal of the joinder order is warranted.

The Defendant argues it has experienced prejudice because this Court failed to join the Trustee earlier. It claims that the Court should be looking at "whether joinder will force a defendant to change a litigation strategy in pursuit of which resources have already been expended." *Aigeltinger v. Target Corp.*, No. 5:21-CV-745, 2022 U.S. Dist. LEXIS 206679, at *8 (N.D.N.Y. Nov. 15,

2022) (internal quotation omitted). It alleges that this is how they have been prejudiced, pointing to their added efforts to litigate this matter since the joinder order. But the merits of the claim were fully litigated before the joinder order. None of the litigation efforts following joinder have dealt with the merits of the dispute. Instead, Defendant has simply been focused on avoiding the merits.

Plaintiffs are correct that in exercising its discretion courts must consider "principles of fundamental fairness" and judicial efficiency. *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 58 (7th Cir. 1982). If a party is forced to investigate new facts or allegations because of a joinder order, and this would be laborious enough to become prejudicial, a court could decline to make an order under Rule 21. *See id.*; *Moore's* at 21.02[4].

But the Defendant does not state how the joinder order has forced it to change its litigation strategy. It admits it has not been forced to investigate new facts or claims. The substantive issues have already been tried. There are no new facts or arguments about whether the manufactured home is a fixture or whether there was proper perfection. No further investigation was required. Other than the identity of the Plaintiff, there are no new allegations to be investigated. Even if the Trustee had been joined earlier, the arguments and facts presented at trial would have been the same.

Essentially, the Defendant is arguing that joinder prejudices them because this litigation has been allowed to continue to decision on the merits rather than being dismissed on a technicality. As the case they cite says,

prejudice factors in when a party is forced to expend resources to *change* their litigation strategy after claims or parties are added. *See Aigeltinger,* No. 5:21-CV-745, 2022 U.S. Dist. LEXIS 206679, at *8.

Not only do courts have wide discretion to act under Rule 21, but the rule itself dictates that "misjoinder of parties is not a ground for dismissing an action." *Chavez*, 251 F.3d at 632. For this reason, it is erroneous to suggest that this Court's use of Rule 21 to correct misjoinder is improper because it prevented dismissal of this action. Correction of misjoinder was precisely what occurred here: the Trustee was joined because the Court found he was the appropriate plaintiff and so was an indispensable party. Without the Trustee, the action could not continue.

Use of Rule 21 to prevent statute of limitations consequences is a valid and sometimes obligatory use of the rule. *See Lee v. Cook Cnty.*, 635 F.3d 969, 971–72 (7th Cir. 2011) ("[The judge's] order dismissing the original suit and directing [plaintiffs] to file new actions violated Rule 21 . . . . [t]here's a reason why Rule 21 reads as it does: When a federal civil action is dismissed without prejudice, the statute of limitations runs continuously."); *see also Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (it is improper for the district court to dismiss misjoined claims when there is a risk of "statute of limitations consequences").

As a result, this Court finds that use of Rule 21 to correct misjoinder is proper, and the continuance of this action does not "unduly prejudice" the Defendant.

a. *There is No Prejudice to Unsecured Creditors.*

The Defendant also argues that the joinder of the Trustee and the avoidance of its lien prejudices the unsecured creditors. They contend that because of the Plaintiffs' failure to provide for payment of what it considers to be the value of its lien into the plan, "all unsecured creditors will be prejudiced by not receiving what they are entitled to under the Plan."

This argument is flawed for two reasons. First, consideration of prejudice under Rule 21 focuses on the parties in the litigation, not on nonparties. Second, the effect of avoidance on general unsecured creditors is a plan confirmation issue under section 1325, not whether there is an avoidable lien.

Whether the Plan is in the best interests of creditors is something that must be determined at a plan confirmation hearing. The parties agreed that a decision on avoidance of the lien needed to be decided before any hearing on objections to confirmation of a plan. So trial on the avoidability of the lien is separate from the decision on the sufficiency of proposed plan payments even though it may directly affect that decision. As a result, the value—if any—of the asserted lien is irrelevant to whether the Trustee can be joined in the adversary proceeding. Objections to the Plaintiffs' plan do not belong in the adversary and will be addressed in the main bankruptcy case.

The argument emphasizes a misunderstanding of the interest of general unsecured creditors. If the lien is not avoided, then payment would be required to Defendant. None of the value would be paid to unsecured creditors. And payment to Defendant would limit any funds available for unsecured creditors.

12

The actual plan confirmation standard is whether the unsecured creditors would be paid at least as much as they would receive in a Chapter 7.

It is undisputed that Debtors could bring a lien avoidance action in their own name in a Chapter 7. If avoided, they would also have a right to claim any equity exempt up to the allowable statutory limits. The amount that would then be available for unsecured creditors—including Defendant—would be calculated. That is the proper measure of whether unsecured creditors are receiving what is required under 11 U.S.C. § 1325(a)(4). The measure is not whether the purported full value of the lien is paid to unsecured creditors.

C. *Joinder Was Not Forfeited Because the Plaintiffs Failed to Raise it Before This Court's Trial Decision.*

The Defendant argues that the Plaintiffs forfeited any joinder argument by failing to raise it before trial.[3] The Plaintiffs did not move to join the Trustee, nor do they have the power to independently join a party under Rule 21, which "may be invoked only by court order." *Moore's* at 21.02 [3]. It has been established that Rule 21 can be used "at any time," even after judgment or on appeal. *Newman-Green, Inc.,* 490 U.S. at 832. Application of joinder should reflect principles of "fundamental fairness," but otherwise courts are given wide discretion when it comes to permissive joinder. *See Chavez,* 251 F.3d at 632; *Intercon Research Associates, Ltd.,* 696 F.2d at 58.

The Defendant points to cases that refer to (1) forfeiture of an argument by failing to develop it or cite any case law to support it and (2) an incarcerated

---

[3] Defendant also argues that derivative standing has been forfeited, but this point is irrelevant because this Court and Plaintiffs are in agreement.

appellant not being able raise unrelated issues on remand that could have

been raised in his first appeal. *See NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075,

2020 U.S. Dist. LEXIS 172920, at *22-23; *United States v. Parker*, 101 F.3d

527, 527–28 (7th Cir. 1996). The question is not whether new claims and

arguments would be forfeited at this point. No new claims or arguments have

been raised.

 The question is whether this Court properly issued a joinder order post

judgment. When all of the facts relevant to a decision on the merits remain

unchanged and were fully tried, fundamental fairness dictates joinder to

correct the misjoinder and permit a decision of the actual claim. The Defendant

has not provided a reason as to why failure to raise "any joinder/ substitution

[argument]" can result in joinder by the Court on its own being forfeited. For

these reasons, this Court concludes that joinder has not been forfeited.

III.   <u>The Complaint is Not Time Barred by the Statute of Limitation Under 11
       U.S.C. § 546.</u>

The Defendant also argues that the current action is time-barred by the

statute of limitations under 11 U.S.C. § 546. It is correct that commencing a

new action under section 544 at the time the amended complaint was filed

would be time-barred under section 546(a)(1)(B).  Defendant claims that the

amended complaint should be considered new because the Trustee could not

be properly joined under Rule 21. But, use of Rule 21 is found to be proper, as

discussed above.

So we now turn to whether the claim was properly amended under Fed.

R. Civ. P. 15. "Rule 15 allows a party to amend despite the running of an

applicable state statute of limitations when parties are sufficiently on notice of

the facts and claims that gave rise to the proposed amendment." *Moore's* at

§ 15.19[1]. The purpose of this is to allow meritorious claims to continue

despite technical difficulties. *See Woods v. Indiana Univ.-Purdue Univ.*, 996 F.2d

880, 883 (7th Cir. 1993). To protect parties from prejudice, Rule 15(c) requires

that a claim sufficiently "relate back." By only allowing claims that "relate

back," courts ensure that parties maintain all notice and protection that the

statute of limitations requires. *See id.*; *Moore's* at § 15.19[1].

The pivotal consideration is whether "the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In

determining whether an amended pleading meets this requirement, courts

should look to whether the defendant had notice of the claim the plaintiff is

now asserting, whether the same kind of evidence supports the new claim, and

if unfair surprise to the defendant could result if the court allowed the

amendment to relate back. *Moore's* at § 15.19[2].

As has been noted already, the amended complaint contains no new

arguments. The evidence is identical. The Defendant has been on notice of all

these assertions of facts and law since the filing of the original complaint. The

only difference between the original and amended complaints is naming the

Trustee as Plaintiff. This level of consistency is more than enough to find that a

pleading relates back: new theories for relief can even be added as an

amendment, so long as they arise from the same factual basis as the original

count, giving the parties notice. *Newman v. Kruszynski (In re Kruszynski)*, 150 B.R. 209, 211 (Bankr. N.D. Ill. 1993).

Here both the factual basis and theory are unchanged. Thus, this Court finds that the amended complaint sufficiently "relates back" to the original. The Defendant had notice, the evidence is identical, there is no new theory, and there is no indication of prejudice.

IV.    Defendant's Lien is Avoidable Under 11 U.S.C. § 544.

The Defendant continues to allege that its lien is properly perfected, and accordingly cannot be avoided under section 544(b)(1). It maintains that the manufactured home is moveable, and thus its security interest is perfected under Wis. Stat. Ch. 101 Subchapter V, "Manufactured and Mobile Homes."

Plaintiffs purchased vacant land intending to build a home. When the time to build would take longer than expected, they considered buying a trailer to use while the house was being built. When looking at a used trailer, the manager of Quality Homes introduced them to manufactured homes.

The manufactured home would be faster and "it didn't do anything that a . . . stick-built home would not have done . . . ." (ECF No. 46, p. 17, lines 4-6). Plaintiffs understood either a basement or a concrete slab was required as a permanent foundation for the home they picked. (*Id.*, lines 4-8). Metal arms drilled into the concrete were needed to affix the house to the concrete. (*Id.*, lines 15-17).

Because they decided they did not need a basement, additional planning and coordination was needed for the slab. Plaintiffs had to put in a well and

16

septic. Sleeves for both had to be inserted in the slab before it dried. (*Id.*, p. 16, lines 9-17).

Options for financing were given to Plaintiffs by Quality Homes. They selected Defendant. To qualify, they were told they had to own the land, so their land contract was converted to a note and mortgage. A copy of the deed was sent to Defendant. Jeanne asked whether Defendant had a title report that would show the deed but was told Defendant's didn't require those or title insurance. She asked whether there would be a title company for closing. The answer was no. Instead, Quality Homes would handle the closing.

Plaintiffs signed a purchase contract that said Quality Homes would deliver and set the house. At the closing, various other documents were presented—a note and security agreement and powers of attorney. While the note and security agreement say under Other Terms and Conditions that the manufactured home was and would remain personal property, there are also contradictory terms in the documents. The documents also refer to a mortgage or deed of trust. No one reviewed or explained the documents to Plaintiffs. They were left to assume they understood the documents. After closing there was an application for a certificate of title. It was signed by Quality Homes. Plaintiffs' signature was inserted using the power of attorney.

Plaintiffs' home cannot move under its own power. It had to be transported from the manufacturing facility to Plaintiffs' land. It complied with the HUD Code—a national building code. It is built on a steel frame using an automated building system. The floor is then attached and the home is

17

constructed on that frame. The frame stays with the HUD-coded manufactured home. (ECF No. 46, pp. 78-79).

In order to transport the home on an interstate highway, it must be delivered in halves. Axles, tires, and hitches are attached for the transport. When it arrives at the building site, it is put in place and the axles, tires, and hitch are removed. The halves are bolted together and a ridge plate is installed. It is bolted to the concrete slab. Utilities—water, septic, electricity—are connected. In sum, there is physical annexation to the land. It is adapted to the purpose to which the land is devoted. And it met the intention of the Plaintiffs to make a permanent accession to the land.

This Court found that the manufactured home is properly classified as a "good that is to become a fixture" under Chapter 409 of the Wisconsin Statutes. The Court concluded that the Plaintiffs intended to use the manufactured home as their permanent residence. That intention was known to the manufactured home dealer when the order was placed and the arrangements for financing were made. It was also obvious to Defendant. Factors which played a part in this determination included:

- The manufactured home was placed on real property.

- The real property address served as the Debtor's residence.

- The temporary axles and wheels used to transport the manufactured home were removed.

- The manufactured home sits on concrete blocks that are set on a full concrete slab.

- It is anchored to the concrete slab, and bolted into a receiving plate bolted into the concrete slab.

18

- Plaintiffs intended to make the manufactured home a permanent home.

- The manufactured home provided everything a stick-built house would provide.

- This manufactured home has never again operated on or over the highways as a motor vehicle.

State law determines the standards for determining when personalty becomes affixed to real property. The Wisconsin law applies a three-part test:

1) Actual annexation to the realty

2) Application or adaptation to the use or purpose to which the realty is devoted

3) Intention of the person making annexation to make a permanent accession to the freehold.

*Premonstratensian Fathers v. Badger Mut. Ins. Co.*, 175 N.W.2d 237, 46 Wis. 2d 362, 367 (Wis. 1970). The application of these tests leads to a determination of whether an item, otherwise considered personal property, constitutes a common law fixture. The home is integral to the real property. It is clearly adapted to and used for a residence. There is no dispute that the unerring intention of the Debtors was for this to be their permanent home.

Simply because it would be physically possible to move this manufactured home does not change the conclusion it became a fixture. The fact the home could be removed from the slab, utilities disconnected, and once separated in half that axles, wheels, and a hitch could be temporarily added for transport doesn't change it from a fixture to a moveable. It is bolted to a required permanent slab. A well was drilled and septic installed. Connections

to utilities were made. It was intended and has been used as a permanent alternative to a stick-built home. And the very size and difficulty in transporting it further confirms the fact it was intended to be placed in one position and used as a permanent home.

Defendant urges a restrictive interpretation of section 101.9218(1), Wis. Stats., that says the method of perfecting security interests in a mobile or manufactured home in that section is exclusive. That ignores section 101.9218(2). It provides that the method Defendant relies on does not apply to a manufactured home that is a fixture to real estate or to a manufactured home that when acquired the owner intends to permanently affix to the owner's land.

Because the manufactured home was intended and considered to be a fixture, the Defendant had two options for perfecting its lien: (a) file a financing statement, or (b) file a fixture filing. Wis. Stat. § 101.9213. It did neither and its lien was found to be not properly perfected.

The Defendant offers no new evidence or legal argument for this Court to consider. So it is the conclusion of the Court that the lien was not properly perfected. The lien is avoidable under section 544.

## CONCLUSION

For the above reasons, this Court finds that the Trustee was properly joined under Fed. R. Bankr. P. 7021. And the complaint relates back to the original and therefore this action does not violate the statute of limitations under section 546 and is properly brought before this Court.

20

The Court finds that the Defendant's lien is also avoidable under section 544. This matter has been fully tried on all the evidence contained in the current action.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated:  August 9, 2023

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge